**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-02596-PAB-NYW

CHRISTOPHER M. ORWIG,

      Plaintiff,

v.

SARGENT LADD, Sterling Correctional Facility Corrections Officer,
(Official and Individual Capacity),

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND ORDER

Magistrate Judge Nina Y. Wang

      This action is before the court on Defendant's Motion to Dismiss Amended Complaint [#29, filed February 9, 2018]. The Motion was referred to this Magistrate Judge pursuant to the Order of Reference dated December 14, 2017, [#10], and the memorandum dated February 9, 2018, [#30]. Having reviewed the Motion to Dismiss, the entire case file, and the applicable law, this court respectfully RECOMMENDS that the Motion to Dismiss be GRANTED.

## BACKGROUND

      Plaintiff Christopher M. Orwig ("Plaintiff" or "Mr. Orwig") initiated this civil action on October 30, 2017, by filing a *pro se* prisoner complaint asserting one claim for an Eighth Amendment violation arising from a raw sewage spill at the Sterling Correctional Facility ("Sterling") on September 2, 2016. *See* [#1]. Plaintiff alleges that Defendant Sargent Ladd forced him "to clean up the raw sewage bio-hazard in his cell without the necessary personal

protective equipment." [*Id.* at 3]. Plaintiff seeks compensatory and punitive damages against Defendant in his individual capacity and injunctive relief against Defendant in his official capacity. Plaintiff remains in the custody of the Colorado Department of Corrections ("CDOC") and is housed at the Cheyenne Mountain Re-Entry Center in Colorado Springs.

On December 18, 2017, the court set a Status Conference to be held February 1, 2018. [#14]. On January 2, 2018, Defendant filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and asserted therein entitlement to qualified immunity. *See* [#16]. Defendant thereafter filed a motion to stay, asking the court to vacate the Status Conference and stay discovery in its entirety pending resolution of the motion to dismiss. *See* [#19]. On January 18, 2018, the undersigned granted the motion to stay. *See* [#21].

On January 25, 2018, Plaintiff filed a motion to amend pursuant to Rule 15(a), *see* [#23], which the court accepted as the operative pleading. *See* [#27, #35]. The Amended Complaint adds neither new parties nor new claims, but rather asserts additional factual allegations to support Plaintiff's claim for an Eighth Amendment violation. *See* [#27]. The court determined that the Amended Complaint rendered the motion to dismiss moot and denied the motion, with leave to refile. *See* [#35]. Defendant filed the pending Motion to Dismiss on February 9, 2018, [#29], and the Parties completed briefing on March 16, 2018. *See* [#36, #37].

## STANDARD OF REVIEW

### I.   Fed. R. Civ. P. 12(b)(1)

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

### II.   Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Plaintiff is appearing *pro se*, the court "review[s] [his] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

### I.      Eleventh Amendment Immunity

While the Motion to Dismiss references Mr. Orwig's request for injunctive relief against Mr. Ladd in his official capacity, *see* [#29 at 2], Mr. Ladd does not separately move to dismiss

Plaintiff's claim with respect to Defendant acting in his official capacity. *See generally* [#29]. Instead, it appears that Mr. Ladd is implicitly relying upon his argument that Mr. Orwig fails to state a claim for relief under the Eighth Amendment to dismiss any request for injunctive relief.

An official capacity suit is, for all intents and purposes, to be treated as a suit against the entity, in this case the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Eleventh Amendment bars suits against a state by its own citizens, and generally immunizes state defendants sued in their official capacities from liability for damages and retroactive equitable relief. *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). It is well-settled that an exception to the Eleventh Amendment's general bar is a suit in which a plaintiff seeks to prospectively enjoin a state official from violating federal law. *Johns*, 57 F.3d at 1552 (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). *See also Rounds v. Clements*, 495 F. App'x 938, (10th Cir. 2012) (noting "*Ex parte Young* permits suit against state employees for prospective relief whether the employee happens to be sued in his individual or official capacity") (citation omitted). The *Ex parte Young* exception "enables federal courts to end continuing violations of federal law by state officials…so as to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Johns*, 57 F.3d at 1552 (citations and internal quotation marks omitted); *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001) ("A suit within the *Ex parte Young* doctrine is not considered a suit against the state; rather, it is a suit against individual state officers who are stripped of their official character") (citation omitted). To determine whether a suit falls within the *Ex parte Young* exception, the court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub.*

*Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002); *Muscogee (Creek) Nation v. Pruitt,* 669 F.3d 1159, 1167 (10th Cir. 2012).

Eleventh Amendment immunity is considered jurisdictional. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017). Nevertheless, the United States Supreme Court has observed that courts may, but need not, raise the question of Eleventh Amendment immunity *sua sponte*. *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 394 (1998) (Kennedy, J., concurring) (citing *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 515, n.19 (1982)); *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (observing that "a court may raise the issue of Eleventh–Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so") (citations omitted). While mindful that the court should not assume the role of advocate for any party, let alone a represented one, this court has determined that it is appropriate to address the application of the Eleventh Amendment to the official capacity claim.

Plaintiff asks the court to "[i]ssue an[] injunction forcing defendant in his official capacity (Colorado Department of Corrections) to provide the necessary and prescribed medical screening, diagnosis, and treatment for any and all infectious diseases that may resulted [sic] due to these claims," and to order Defendant "to receive the proper and required training in hazardous waste identification and clean-up." [#27 at 10]. However, Plaintiff does not allege an ongoing violation of federal law in his operative complaint. The allegations reflect that the alleged constitutional violation arose from a single incident in which Defendant forced Plaintiff to clean up raw sewage for approximately two hours. There are no allegations that Plaintiff has been required to cleanup raw sewage on multiple occasions or on an ongoing basis. *See generally* [#27]. Indeed, Plaintiff states that when a second raw sewage spill occurred, Sterling

staff prohibited him from cleaning it and rather addressed the spill "appropriately and in accordance with CDOC's AR 1550-05, and all of the state and local laws." [*Id.* at 8]. Upon review of the allegations and controlling authority, this court finds that Plaintiff has not alleged the ongoing constitutional violation necessary to invoke the *Ex parte Young* exception.[1] On this separate basis, the court concludes that Plaintiff is not entitled to injunctive relief against Defendant sued in his official capacity, and that the claim for such should be dismissed without prejudice for lack of jurisdiction. *See Colby*, 849 F.3d at 1278. The court now turns to Plaintiff's conditions of confinement claim brought against Defendant in his individual capacity.

## II. Eighth Amendment Violation

### A. Applicable Law

Title 42 U.S.C. § 1983 allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). In the Motion to Dismiss, in addition to arguing that Plaintiff fails to state a claim for a constitutional violation, Defendant asserts entitlement to qualified immunity, which "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted)). Qualified immunity is an affirmative

---

[1] Plaintiff alleges he "has been denied the necessary blood screening by [Sterling] to ascertain the condition of his physical health," [#27 at 4], and thus this court recognizes that he raises concern about potential harm not yet identified caused by exposure to the raw sewage. However, while prospective harm may be sufficient to ground an Eighth Amendment violation, it is not synonymous with an ongoing injury that allows injunctive relief against defendants in their official capacities under *Ex parte Young*. *See Helling v. McKinney*, 509 U.S. 25, 36 (1993).

defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255). "[F]or a right to be clearly established, 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010).

When qualified immunity is asserted, a court may consider, and rule, on either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009). As observed by the Supreme Court, the first prong is intended to further the development of constitutional precedent. *Id.* Though this court ultimately recommends that the Motion to Dismiss be granted based on the second prong of the qualified immunity test, it notes that the Parties have briefed whether a substantive constitutional right exists, and further notes that it proceeds pursuant to 28 U.S.C. § 636(b) and is mindful that a more complete Recommendation may be helpful. Therefore, the court begins by asking whether the wrong alleged by Plaintiff, i.e., that he was forced to clean up raw sewage without any protective gear, and thereby exposed for approximately two hours to human waste and any pathogens, is a cognizable constitutional violation under the Eighth Amendment.[2]

The treatment a prisoner receives in prison and the conditions under which he or she is confined are subject to Eighth Amendment scrutiny. "The Eighth Amendment's prohibition on

[2] The presiding judge, the Honorable Philip A. Brimmer, may simply forego such analysis should he agree that any constitutional right is not clearly established.

cruel and unusual punishment does not mandate comfortable prisons, and conditions imposed may be restrictive and even harsh." *DeSpain*, 264 F.3d at 973 (citations and internal quotations omitted). However,

> when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment....

*DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 199–200 (1989). To prevail on a conditions of confinement claim under the Eighth Amendment, an inmate must establish that the condition complained of is "sufficiently serious" to implicate constitutional protection, and that prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). These requirements of proof are known as objective and subjective components of the claim. Essentially, in the course of proving a claim challenging conditions of confinement, a plaintiff must "establish that it is contrary to current standards of decency for anyone to be so exposed against his will and that prison officials are deliberately indifferent to his plight." *Helling*, 509 U.S. at 34. For claims based on exposure to hazardous materials that may cause future harm to an inmate's health, the court asks whether the exposure is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* at 36.

To satisfy the first, objective requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *DeSpain*, 264 F.3d at 971 (quoting *Farmer*, 511 U.S. at 834). The evaluation of a conditions of confinement claim requires "a

scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused" by exposure to the condition, as well as an assessment of "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36 ("the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate") (emphasis in original). In reviewing this component of the claim, the court necessarily relies on the particular facts of each situation, including the "circumstances, nature, and duration" of the challenged condition. *DeSpain*, 264 F.3d at 974. While not dispositive, the length of exposure to the hazardous condition is "of prime importance." *Id.* "[T]he severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation." *Id.* (citations omitted). Conversely, exposure to a hazardous condition that lasts over a significant period of time may give rise to the level of a constitutional violation. *See id.*

Second, under the subjective component, the prisoner must present evidence of the prison official's "culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Wilson,* 501 U.S. at 297. *See Farmer*, 511 U.S. at 837 (holding deliberate indifference exists only when the defendant "knows of and disregards an excessive risk to inmate health and safety."). The subjective standard requires a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and further citation omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to

demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 1231 (internal quotations omitted). Defendant argues that Plaintiff cannot satisfy either the objective prong or subjective prong of the inquiry.

B.     <u>Allegations and Arguments</u>

Plaintiff alleges that on the evening of September 2, 2016, a "medically contaminated raw sewage spill" occurred in his cell as a result of faulty plumbing. [#27 at 2]. He alleges that in the days leading up to the spill, inmates had reported concerns regarding compromised plumbing to various staff members at Sterling, including to Defendant, who had not taken action to address the concerns. [*Id.*] Ultimately, Plaintiff states, human waste flushed from toilets in cells above and around his cell backed up in the pipes and spilled out of the toilet into Plaintiff's cell. Once the pipes were fully compromised, raw waste spilled out of Plaintiff's cell every time an inmate in a surrounding cell flushed his toilet. [*Id.*] Only Plaintiff's toilet flooded, but at the peak of the spill "half the Pod day hall was covered in this medically contaminated raw sewage." [*Id.*] Plaintiff asserts that Defendant "forced [him] to choose between locking down with this life threatening bio-hazard, or clean it up without any [personal protective equipment], and only the chemical expose." [*Id.* at 2-3]. Plaintiff alleges that he thus "had no choice but to physically handle medically contaminated raw sewage, exposing him to all of the life threatening pathogens contained in this type of bio-hazard including but not limited to HIV, AIDS, Hepatitis A,B,C, shigella, and herpes which [he] claims splashed onto his body and may have infected his eyes." [*Id.* at 3]. He asserts that he has since developed "an unexplained rash and sever boils [sic] and acne since this incident," which he believes is the result of coming into physical contact with the raw sewage, and that "due to the dormant nature of many of the pathogens he was exposed to he

may be currently carrying one or more these silent killers." [*Id.*] Plaintiff alleges that in refusing to provide him with the Personal Protective Equipment ("PPE") necessary to safely clean the hazardous material contained in the spill, Defendant acted with deliberate indifference to Plaintiff's safety, health, and wellbeing, and in contravention to CDOC's Administrative Regulation ("AR") 1550-05 governing the appropriate disposal of hazardous waste. [*Id.* at 3, 7]. He also alleges that Sterling and/or CDOC has demonstrated deliberate indifference in failing to provide him with blood screening "to ascertain the condition of his physical health." [*Id.* at 4].[3]

Plaintiff also represents that he has completed CDOC's "accredited janitorial vocational training program through Pueblo Community College via [Sterling], and amassed college credits for this course." [#27 at 4]. He states that "[o]ne of the requirements of this accredited course is knowing how to identify and safely and effectively clean a hazardous materials spill, including those containing blood borne pathogens." He further states that the course "specifically instructs that all blood, and body fluid spills should be approached and treated with certainty that they contain 'every' disease possible." [*Id.* at 5]. Plaintiff describes the training for the course to include "having and wearing all of the required PPE, which include safety boots, hazmat body clothing, rubber or latex gloves, and face shields to prevent s[p]lash back into the eyes and or nose," and asserts that "even the unseen microscopic particles contain these life threatening diseases." [*Id.*] He also avers that CDOC AR 1550-05 required that the mop heads, rags or other items be put into red biohazard bags for appropriate cleaning and/or disposal. [*Id.* at 7].

---

[3] This court notes that while it is required to construe Plaintiff's pleading liberally, it does not discern a claim against Defendant for deliberate indifference to a serious medical need. Plaintiff asserts that he has requested but not received various medical tests and screening following his exposure to raw sewage, but he does not allege that Defendant is responsible for providing those tests or otherwise interfered with Plaintiff's access to such tests.

1.     *Objective Prong*

The Tenth Circuit has recognized that "[i]nmate exposure to sewage can constitute a serious risk to inmate health and safety and satisfy the objective component," and advised that there is "no requirement that an inmate suffer serious medical problems before the condition is actionable." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (citations omitted).  The Tenth Circuit has also instructed that, "[a]t the same time, the frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered when considering the objective component."  *Id.* (citations omitted).

Defendant asserts that Plaintiff was exposed only briefly to an "abrupt plumbing malfunction, not the consequence of a systemic and ongoing issue," that he was required to clean only his personal living space, not the common area, and that he was provided with "mops, rags [and] other supplies," including gloves.  [#29 at 5 & n.1].  Defendant further argues that Plaintiff had janitorial training and therefore was "knowledgeable of effective and safe cleaning methods, which would have guided and aided in the cleaning of his cell."  [*Id.* at 5].

The court addresses the last three contentions first.  As an initial matter, the fact that Plaintiff's cleaning was limited to his personal living space only does not persuade the court that dismissal is proper.  The allegations state that the waste that spilled into Plaintiff's cell was the product of multiple other inmates.  Accepting as true, as the court must do at this stage, the allegation that the waste was not Plaintiff's own, it is immaterial that Plaintiff was required to clean only his cell.  Additionally, the Amended Complaint does not state that Plaintiff received gloves for use during the cleanup.  A grievance form attached to the Amended Complaint, which Defendant cites for support, reflects the response of a prison official that "[s]taff interviews

indicate that the grievant was issued gloves and cleaning fluid(s) necessary to clean the cell."
[#27 at 12]. However, Plaintiff expressly alleges in the grievance that he was not provided with
gloves, or other protective gear such as eyewear, boots, or facial protection, [*id.*], and he
confirms in his Response to the Motion to Dismiss that he was not issued any protective gear.
[#36 at 6]. These allegations do not reflect a simple disagreement as to what type of equipment
is necessary for the proper cleanup of raw sewage; and whether Plaintiff was in fact issued
gloves or other protective gear in advance of cleaning up the spill is a question of fact that cannot
be resolved at this juncture.[4] Finally, the fact that Plaintiff had janitorial training does not
somehow mitigate the serious health risk associated with exposure to human waste when
Plaintiff's specific allegations are that he was not provided with any protective gear, let alone the
PPE that he was trained to use. This court now turns to Defendant's main contention, that the
length of exposure is insufficient to state a constitutional violation.

In *Shannon*, an inmate cleaning part of the apparatus used to remove waste from the
prison facility alleged that, while she was provided protective gear to wear, the sleeve of her suit
did not reach the top of her glove and that during her cleaning she "got some of the solid waste
on her arm," and she "was not allowed to clean it off until she had finished and gone back
inside." [*Id.* at 1167]. The district court granted the defendants' motion for summary judgment,
finding that plaintiff had not provided evidence of either an unreasonable risk of harm or of
deliberate indifference. *Shannon v. Graves,* No. CIV.A.98–3395–KHV, 2000 WL 206315, at
*10 (D. Kan. Jan. 5, 2000). In affirming, the Tenth Circuit accepted without discussion that

---

[4] Defendant's other contention that Plaintiff was offered PPE "as soon as possible," but that he
declined it claiming he had already finished cleaning his cell, *see* [#29 at 5 (citing #27 at 15)], is
likewise a question of fact that cannot be resolved at this phase.

plaintiff's allegations "may be able to satisfy the objective component," but held that they did not demonstrate deliberate indifference "insofar as her one-time exposure to sewage" was concerned. *Shannon*, 257 F.3d at 1168. Similarly, in *Honeycutt v. Mitchell*, the district court adopted with very little discussion then-Magistrate Judge Bacharach's recommendation that the objective component was met where a pretrial detainee, who was permitted to leave his cell during the day, alleged he was exposed to sulphuric acid fumes and raw sewage for three consecutive nights. No. CIV–08–140–W, 2009 WL 1421454, at *2 (W.D. Okla. May 20, 2009) (evaluating claim under Eighth Amendment standards). And in *DeSpain*, the Tenth Circuit held that the objective prong was met where plaintiff alleged that "the lack of access to working toilets led to his exposure to other inmates' urine and feces via the standing water and also to close confinement with the odor of his own accumulated urine." 264 F.3d at 974 (collecting cases).

Defendant emphasizes that Plaintiff was exposed to raw sewage for no longer than the approximately two hours it took Plaintiff to clean up the spill. However, courts analyze conditions of confinement claims based on the totality of the circumstances. *See, e.g., Shannon*, 2000 WL 206315, at *10 (citing *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996)). Though the contact was limited in duration, Mr. Orwig alleges that his toilet was flooding with "large chunks of feces and other medically contaminated waste that was backing out of his toilet every time one of the corresponding cells flushed their toilets." [#27 at 2]. Plaintiff further contends that the contamination included "toilet paper and bloody rags," and that the flooding continued until "half the Pod day hall was covered" in the raw sewage. [*Id.*]. As discussed above, Plaintiff alleges that he was given no protective gear at all, i.e., "no boots, no gloves, no mask, no goggles, and no face shield." [*Id.* at 7]. And Plaintiff asserts that Defendant Ladd essentially

issued him an ultimatum, i.e., clean up the sewage as instructed, or "lock down with it." [#27 at 7]. The Tenth Circuit in *DeSpain* observed that "exposure to human waste carries particular weight in the conditions calculus," 264 F.3d at 974, and Plaintiff essentially contends that either choice exposed him to contact with human waste without any protective gear. In light of the conclusions reached in *Shannon*, *Honeycutt*, and *DeSpain* that the respective plaintiffs' allegations sufficed to satisfy the objective component, I find Plaintiff too has adequately alleged that he was made to endure a sufficiently serious risk to his health or safety when Defendant ordered him to either clean up a raw sewage spill that was not limited to his own human waste, without any protective equipment that would have protected him from coming into physical contact with the waste and any pathogens contained therein, or "lock down with it." Accordingly, I turn to whether his allegations satisfy the subjective component of the claim.

2. *Subjective Prong*

With respect to the subjective prong, Defendant argues that he could not have known of and disregarded an excessive risk to inmate health and safety because "no excessive risk existed." [#29 at 8]. This argument is duplicative of Defendant's contentions regarding the objective prong and, based on the reasons set forth above, fails to persuade this court that dismissal is appropriate. Defendant also argues that "[t]he mere fact that Mr. Orwig was not provided the specific cleaning supplies that he personally believed were necessary for the situation, does not establish that Mr. Ladd acted with deliberate indifference." [*Id.*]. In response, Plaintiff argues that the risk to his health and safety posed by coming into physical contact with the hazardous material was obvious, or at least a matter of common sense, and that, furthermore, Defendant "should have been aware of the required PPE, and proper procedure for

safely and effectively cleaning a medically contaminated raw sewage spill, as outlined in AR 1550-05, and the accredited janitorial voc ed program at [Sterling]" because of his many years of employment at CDOC/SCF and "common sense." [#36 at 10].[5]  Plaintiff alleges that in response to his verbalized bases for concern, Defendant stated that Plaintiff "could clean it up or lock down with it, he 'didn't care which.'"  [#23 at 7].

As an initial matter, AR 1550-05 does not set out any requirements regarding either the PPE required to clean up a sewage spill, or how to handle the equipment used during such a cleanup.  *See* AR 1550-05, attached to this Recommendation and Order as Exhibit 1.[6]  Therefore, even if Plaintiff had pled in his Amended Complaint that Defendant Ladd knew of AR 1550-05 (and he does not), *see* [#27], such an allegation would be insufficient for a factfinder to conclude Defendant Ladd had subjective knowledge of the serious risk to Mr. Orwig and yet disregarded it.  The court thus turns to Plaintiff's additional allegations:  (1) Plaintiff informed Defendant Ladd of the proper equipment necessary to safely clean such a spill; (2) the known risk associated with forgoing the proper equipment was "common sense"; (3) despite this knowledge, Defendant refused to provide Plaintiff with the proper equipment (including gloves, boots, or eyewear); and (4) when a second, subsequent spill occurred, a different prison official forbade Plaintiff from participating in the cleanup and rather instructed the official porters to remove the mess.  [#23 at 8].  Plaintiff also alleges that the CDOC's own accredited janitorial vocation

---

[5] Where the court directly quotes from Plaintiff's papers, it maintains the spelling, capitalization, punctuation, and grammar used by Plaintiff without correction or the use of [sic].

[6] While the court's analysis is typically focused on the allegations as set forth within the four corners of the complaint, the court may consider documents referred to in the complaint that are central to the claims without converting the motion to dismiss into one for summary judgment. *Grynberg v. Koch Gateway Pipeline Co*., 390 F.3d 1276, 1279 n.1 (10th Cir.2004).

training program through Sterling instructs that the cleanup of blood and bodily fluid spills should be facilitated with PPE including safety boots, hazmat body clothing, rubber or latex gloves, and face shields. [*Id.* at 4-5].

Plaintiff is not required to establish that Defendant acted or failed to act believing that harm actually would befall Plaintiff; it is enough that Defendant acted or failed to act despite his knowledge of a substantial risk of serious harm. *Honeycutt*, 2009 WL 1421454, at *2 (citing *Farmer*, 511 U.S. at 842). *See DeSpain*, 264 F.3d at 976-77 (finding issue of material fact as to subjective prong regarding defendant associate warden who was responsible for cell block and who ordered that the soiled cell block not be cleaned, but issued rubber boots to guards, who then asked inmates how they felt about walking in "piss water."). *Cf. Shannon*, 257 F.3d at 1168 (specifying that the case involved, among other things, the adequacy of the protective gear, not whether any such gear was provided, and determining that the allegations "suggested negligence—not a wanton and obdurate disregard for inmate health and safety."). And controlling authority reflects that a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *See Farmer*, 511 U.S. at 842. *But see Rish v. Johnson*, 131 F.3d 1092, 1098-1100 (4th Cir. 1997) (reversing denial of summary judgment, declining to apply the rationale of *Farmer* to case where inmates alleged that prison officers had actual knowledge of a substantial risk of harm when they refused orderlies' request for protective gear to use in cleaning up other inmates' bodily fluids such as blood, feces, and urine). Here, Plaintiff alleges that he told Defendant Ladd of the biohazard, that the spill was extremely dangerous to the entire pod population and that it needed to be cleaned by the appropriately trained personnel, and that they needed all of the required PPE (including boots, a

hazmat suit, rubber or latex gloves, goggles, face shield, and mask) to safely and effectively deal with the biohazard. [#27 at 6-7]. Plaintiff further alleges that he told Defendant Ladd of his concern regarding potential pathogens within the raw sewage. [*Id.* at 6]. I find that Plaintiff has asserted allegations that Defendant Ladd knew of the serious risk to him and was deliberately indifferent to it sufficient to survive a Rule 12(b)(6) review.[7]

3. *Qualified Immunity*

As discussed above, to overcome Defendant's invocation of qualified immunity, Plaintiff must also show that the law governing the conduct was clearly established at the time of the alleged violation. *DeSpain*, 264 F.3d at 971. This court thus considers specifically whether requiring Plaintiff to clean up raw sewage in an area limited to his cell, without any protective gear, was a constitutional violation that was clearly established on September 2, 2016. After reviewing the case law from this Circuit and District, this court finds that it was not.

It is clearly established that exposure to human waste, without any protective gear, for thirty-six hours or more, is a constitutional violation. In *DeSpain*, the Tenth Circuit considered circumstances in which prisoners plugged their toilets to cause a flood that resulted in four inches of standing water. The prison shut off water to the toilet system to prevent further flooding and sent guards with video cameras to document the flood. The tier janitor was ordered to clean the mess, but he refused and quit his job. The toilet system remained off for most of a thirty-six-hour period during which Plaintiff "was exposed to the stench of sitting urine in his

---

[7] In doing so, this court does not find that any exposure to human waste without protective gear, for any duration of time, amounts to an Eighth Amendment violation. Rather, this court concludes that based on the particular circumstances presented by Plaintiff in his Amended Complaint, he has sufficiently stated a cognizable Eighth Amendment violation to survive a challenge pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

toilet," and later described "hearing prisoners urinate into the water and seeing feces floating amidst other debris in the water near his cell." 264 F.3d at 972. During the shut off, guards rolled food carts through the urine-mixed water; the carts' ground clearance was approximately the same as the water depth, "making it difficult to avoid contact between the food and the contaminated water." *Id.* The guards failed to collect the food trays after one meal service and at future meals the guards "merely kicked the trays out of their way, adding uneaten and partially eaten food to the standing water." *Id.* The guards started wearing rubber boots at one point to protect themselves from the mess. Plaintiff avoided eating during the course of the flood and "spent nearly the entire period confined to his bed in his cell." *Id.* at 973 (internal quotations and alterations omitted). The court reversed the grant of summary judgment to the defendants and held that they were not entitled to qualified immunity when the plaintiff was required to live, eat, and sleep, exposed to human waste, for thirty-six hours. *Id.* at 979-80.

In *McBride v. Deer,* 240 F.3d 1287 (10th Cir. 2001), the Circuit similarly held that a prisoner confined in a feces-covered cell for three days stated conditions of confinement claim. Courts in this District have also held that exposure to human waste for less than a day amounts to a cognizable constitutional violation. *See Havens v. Clements*, No. 13–cv–00452–MSK–MEH, 2014 WL 1213804, at (D. Colo. Mar. 24, 2014) (relying on *DeSpain* on Rule 12(b)(6) review to find that qualified immunity did not apply where plaintiff, who was an incomplete quadriplegic, alleged that he had been left lying in his own feces for hours because defendants refused to carry him to the toilet); *Washington v. Owens*, No. 17–cv–00941–MEH, 2018 WL 684768, at *1, *4 (D. Colo. Feb. 2, 2018) (relying on *DeSpain* on Rule 12(b)(6) review to find that qualified

immunity did not apply where plaintiff alleged that toilet overflowed in his cell and he subsequently "ate and remained in a cell full of human waste for hours.").

It is also clear that requiring an inmate to clean human waste with inadequate protective gear does not necessarily amount to a constitutional violation. *Shannon*, 257 F.3d at 1168 (concluding that the plaintiff's one-time exposure to sewage was not a constitutional violation, when she was provided protective clothing and gear and was allowed to shower after the exposure). Similarly, the out-of-circuit cases upon which the *Shannon* court relied held respectively that qualified immunity applied to prison officers who denied protective gear to inmates cleaning up sewage, *Rish*, 131 F.3d at 1097 (applying qualified immunity where inmates were afforded protective gear of gloves, boots, and eyewear, but not coveralls), and to prison officers who provided only allegedly inadequate protective gear. *Good v. Olk-Long*, 71 F.3d 314, 316 (8th Cir. 1995). Both *Rish* and *Good* distinguished their facts from those in *Fruit v. Norris,* 905 F.2d 1147, 1151 (8th Cir. 1990), in which prisoners were forced to clean a well by climbing into a deep and narrow hole into which all the raw sewage from the prison facility was dumped, causing the Eighth Circuit to opine on review, "[w]e believe forcing inmates to work in a shower of human excrement without protective clothing and equipment would be inconsistent with any standard of decency." (citation and internal quotation marks omitted).

But this court could not find case law that clearly established that any exposure to human waste without protective gear amounted to a constitutional violation, or that a singular exposure to human waste without protective gear for a limited duration of two hours amounted to a constitutional violation. As the Tenth Circuit has explained,

> A constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent. This precedent cannot define

the right at a high level of generality. Rather, the precedent must be particularized to the facts. But even when such a precedent exists, subsequent Tenth Circuit cases may conflict with or clarify the earlier precedent, rendering the law unclear.

A precedent is often particularized when it involves materially similar facts. But the precedent may be adequately particularized even if the facts differ, for general precedents may clearly establish the law when the defendant's conduct obviously violates the law. Thus, a right is clearly established when a precedent involves materially similar conduct or applies with obvious clarity to the conduct at issue.

By requiring precedents involving materially similar conduct or obvious applicability, we allow personal liability for public officials only when our precedent puts the constitutional violation beyond debate. Thus, qualified immunity protects all officials except those who are plainly incompetent or those who knowingly violate the law.

*Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (internal brackets, quotations, and citations omitted); *see also Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (discussing what constitutes clearly established law).

In so concluding, this court does not minimize the indisputably noxious experience of spending two hours cleaning up raw sewage without any protective equipment. But unlike plaintiffs who were made to live and pursue the daily activities of living amongst the waste, Mr. Orwig's exposure was limited in nature. *Cf. DeSpain*, 264 F.3d at 979-80; *McBride*, 240 F.3d at 1292; *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("[c]ausing a man to live, eat, and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted") (internal quotations and alternations omitted). And it is not lost on this court that had Plaintiff refused to comply with Defendant Ladd's purported ultimatum to clean up the sewage, he might well have suffered a cognizable constitutional violation by being "locked down" with human waste for an unacceptable period of time. But the court must hew to the consistent admonishment of the Supreme Court and the Tenth Circuit that courts not "define

clearly established law at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 2083 (2011).

In the absence of Tenth Circuit case law closer on point to the facts in this case, I cannot find that Defendant would have been on notice that he was violating the Eighth Amendment in requiring Plaintiff to expose himself to hazardous waste without protective gear for approximately two hours for the purpose of cleaning up a raw sewage spill. *Cf. Templeton v. Anderson*, 607 F. App'x 784, 787 (10th Cir. 2015) (holding plaintiffs' exposure to "black mastic and asbestos-containing tile for approximately one hour," was "not a significant duration given the type of exposure at issue."). *Cf. also Mauchlin v. Davis*, No. 12–cv–01449–RM–BNB, 2014 WL 5069547, at *9 ("because it is clearly established that deliberate indifference in failing to remedy unsanitary confinement conditions consisting of human waste for an extended period of time violates the Eighth Amendment…the Seven Defendants are not entitled to qualified immunity," reviewing claim based on 97-day incarceration in special housing unit). *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (stating that "[t]he difference between enduring certain harsh conditions for seven weeks versus six months may be constitutionally significant"). And while the court may consider authority from other circuits, I cannot conclude that the weight of law from outside the Tenth Circuit is clearly established as Plaintiff maintains, because the circumstances are too distinct from the ones presented here. *See generally* [#36 (citing *inter alia Fruit,* 905 F.2d at 1148-49 (discussing repeated exposure); *Burton v. Armontrout*, 975 F.2d 543, 545 n.2 (8th Cir. 1992) (discussing "large scaled" exposure); *Vinning-El v. Long*, 482 F.3d 923,

924-25 (7th Cir. 2007) (discussing exposure of six days))]. Accordingly, I respectfully

RECOMMEND that the court grant the Motion to Dismiss.[8]

## CONCLUSION

The court respectfully **RECOMMENDS** that the Motion to Dismiss [#29] be

**GRANTED**.[9] Additionally,

**IT IS ORDERED** that the Clerk of the Court is **DIRECTED** to mail a copy of this

Recommendation to Plaintiff at the following address:

CHRISTOPHER M. ORWIG #163018
CHEYENNE MOUNTAIN RE-ENTRY CENTER (CMRC)
2925 EAST LAS VEGAS STREET
COLORADO SPRINGS, CO 80906

---

[8] Given the nature of the recommendation, this court does not address Plaintiff's claim for punitive damages.

[9] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED: July 26, 2018                          BY THE COURT:

                                              _____
                                              Nina Y. Wang
                                              United States Magistrate Judge